1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN REED,                               No. 2:19-cv-0275 AC P

12                  Plaintiff,

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   ROBERT FOX, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner who is currently represented by court-appointed counsel.[1]  The

18   case is before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

19   Rule 302.  Before the court is defendants' motion to dismiss.  ECF No. 58.  Plaintiff filed an

20   opposition (ECF No. 62), and defendants filed a reply (ECF No. 63).  Oral argument was heard

21   on April 26, 2023.  ECF Nos. 65, 67.  For the reasons explained below, the undersigned will

22   recommend that the motion be granted in part and denied in part.

23        I.    ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

24        Plaintiff is a paraplegic man who was incarcerated at California Medical Facility ("CMF")

25   at the time of the events in question.  ECF No. 28 (Third Amended Complaint) at 1-3.  He names

26

27   [1]  Counsel was initially appointed for the limited purposes of preparing the Third Amended
     Complaint.  ECF No. 26.  The appointment was extended to cover participation in ADR, ECF No.
28   41, and then to discovery and the litigation of dispositive pretrial motions, ECF No. 57.

1

1    as defendants the California Department of Corrections and Rehabilitation and CMF employees

2    Robert W. Fox (Warden); Daniel E. Cueva (Chief Deputy Warden); Cherita E. Wofford

3    (Americans with Disabilities Act ("ADA") Associate Warden); Daniel E. Hurley (Associate

4    Warden); Noel G. Dizon (Custodial Officer); Usha P. Pai (Primary Care Provider); Joseph Bick

5    (Chief Medical Officer); Joan Gerbasi (Chief Executive Officer); Joanny L Tan (Registered

6    Nurse); Madhu Chawla (Registered Nurse); William J. Russell (Supervisor of Building Trades);

7    Hank Blank (Correctional Plant Supervisor); Dennis House (Plant Operations Worker); Does 1-

8    10 (Custody Does), and Does 11-15 (Health Care Does).  ECF No 28 at 2-12.

9         The Third Amended Complaint alleges in sum as follows.  From May 2016 to July 2016,

10   plaintiff repeatedly notified defendants that he had heard a cracking noise coming from the wall

11   each time he used the grab bar next to his dorm's ADA accessible toilet.  Defendants failed to

12   inspect, repair, or replace the grab bar.  ECF No. 28 at 1-3, 6, 12-14.  On September 19, 2016,

13   while plaintiff was using the grab bar to transfer himself from his wheelchair to the toilet, the

14   defectively installed and/or maintained grab bar broke, causing plaintiff to fall and fracture his

15   leg.  Id. at 2-3, 14.  After the injury plaintiff was denied critically necessary medical care, which

16   caused him severe physical, mental, and emotional pain and suffering.  Id. at 2-3, 14.  As a result

17   of defendants' actions and/or inaction, plaintiff now has 7 screws and a metal plate in his left leg,

18   a 12-inch scar on the leg, and a 2-centimeter-wide hole in his left foot due to defendants' failure

19   to properly treat a related pressure sore.  Id. at 25.

20        After plaintiff broke his leg, he notified defendants about his pain and medical needs—

21   which were corroborated by San Joaquin General Hospital ("SJGH") physicians—but defendants

22   refused to provide him with necessary medical care, and they denied and/or delayed his requests

23   for reasonable accommodations.  ECF No. 28 at 2-3, 6.  One correctional officer defendant

24   ordered plaintiff to get out of his wheelchair without any assistance, despite the fact that plaintiff

25   is a paraplegic and cannot ambulate on his own, while using language indicating racial animus.

26   Id. at 6.  The same defendant then retaliated against plaintiff for filing a complaint, and threatened

27   physical violence against him.  Id.

28        On this factual basis, the Third Amended Complaint presents the following claims for

2

1   relief: (1) violation of Title II of the Americans with Disabilities Act (42 U.S.C § 12131 et seq.)

2   ("ADA claim"); (2) violation of Section 504 of the Rehabilitation Act (28 U.S.C. § 794 et seq.)

3   ("RA claim"); (3) violation of plaintiff's Eighth Amendment rights (42 U.S.C. § 1983) (deliberate

4   indifference to medical needs); (4) violation of plaintiff's First Amendment rights (42 U.S.C. §

5   1983) (retaliation); (5) Tom Bane Civil Rights Act (California Civil Code § 52.1 et seq.); (6)

6   California Disabled Persons Act (California Civil Code § 54 et seq.); and (7) negligence and

7   negligence per se under California law.  ECF 28 at 25-44.

8        II.   MOTION TO DISMISS

9        Defendants seek dismissal of the Third Amended Complaint ("TAC") in its entirety.  As

10  to the federal causes of action, defendants argue that the factual allegations of the TAC fail to

11  state any claim for relief.  As to plaintiff's Section 1983 claims, they also contend that they are

12  entitled to qualified immunity.  Defendants argue that because all federal claims fail as a matter of

13  law, the court should decline to exercise jurisdiction over the state law claims.  In the alternative,

14  they assert that all state law claims are barred by the California Government Claims Act

15  ("CGCA").  They also challenge the sufficiency of plaintiff's allegations to support claims under

16  the Bane Act and the California Disabled Persons Act.  ECF No. 58.

17       Plaintiff opposes the motion.  ECF No. 62.  He acknowledges that his ADA and RA

18  discrimination claims are redundant as to the individual defendants, and states that he wishes to

19  proceed against CDCR only on the relevant portions of Claims One and Two.  Id. at 12 n.2.[2]  As

20  to defendants' argument that the TAC fails to allege compliance with the claims presentation

21  requirement of the CGCA, plaintiff seeks leave to amend.  In all other respects plaintiff urges that

22  the motion should be denied because he has adequately pleaded claims for relief.

23       III.   STANDARD

24       "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

25  sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

26  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

27  _____

28  [2]  All citations to electronically filed documents reference the page numbers imposed by the CM/ECF system.

1  sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901

2  F.2d 696, 699 (9th Cir. 1990).

3          To survive dismissal for failure to state a claim, a complaint must contain more than a

4  "formulaic recitation of the elements of a cause of action;" it must contain factual allegations

5  sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly,

6  550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that

7  "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id.

8  (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed.

9  2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a

10  claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

11  (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

12  factual content that allows the court to draw the reasonable inference that the defendant is liable

13  for the misconduct alleged." Id.

14          In reviewing a complaint under this standard, the court "must accept as true all of the

15  factual allegations contained in the complaint," construe those allegations in the light most

16  favorable to the plaintiff, and resolve all doubts in the plaintiffs' favor. See Erickson v. Pardus,

17  551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

18  960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

19  Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of

20  factual allegations, or allegations that contradict matters properly subject to judicial notice. See

21  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

22  Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

23          IV.   DISCUSSION

24                A. Preliminary Considerations

25          Plaintiff has suggested that defendant's challenge to the sufficiency of his pleading should

26  be summarily rejected because the TAC has already been screened and found adequate to

27  proceed.  The court disagrees.  The threshold screening required by the Prison Litigation Reform

28  Act, 28 U.S.C. § 1915A, does not necessarily defeat a challenge to the pleading under Rule 12.

4

See Teahen v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (screening order does not preclude motion to dismiss).  Here, the order screening the TAC (ECF No. 29) did not undertake the detailed review of plaintiff's claims required by defendants' motion.  The court therefore turns to defendants' arguments for dismissal.

> ### B.  Claims One and Two:  ADA and RA

>> #### 1.  Overview

The court considers these two claims together because the rights and obligations created by the ADA and the Rehabilitation Act are substantially identical.  See Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 & n.11 (9th Cir. 1999).[3]  Plaintiff alleges that his statutory rights as a disabled person were violated in three ways: (1) the failure to provide a safe and ADA compliant bathroom grab bar in violation of 42 U.S.C. § 12132; (2) failure to provide reasonable accommodations in the form of a protective boot, knee immobilizer, wheelchair transfer assistance during a search, pillow wedge, and orthopedic shoes, also in violation of 42 U.S.C. § 12132; and (3) retaliation by defendant Officer Dizon in violation of 42 U.S.C. § 12203.  ECF No. 28 at 25-32.

Defendants contend that plaintiff's allegations do not state a claim for relief under the ADA because neither the grab bar, the specified orthopedic and medical supplies, nor routine prison searches constitute a "service, program or activity" to which disabled inmates have a statutory right to inclusion and accommodation.  They also argue that plaintiff has not alleged facts demonstrating intentional discrimination.  As to the retaliation subclaim, defendants argue that plaintiff has not specified facts establishing any connection between the alleged intimidation and plaintiff's exercise of his rights under the ADA.

>> #### 2.  Disability Discrimination

>>> ##### a.  Applicable Law

To state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise

---

[3] The primary difference is that the RA applies only to programs receiving federal funds.  29 U.S.C. § 794.  It is undisputed that California prisons are subject to both the RA and the ADA.

> qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)); see generally 42 U.S.C. § 12132.

A prisoner may state a Title II discrimination claim based on "the alleged deliberate refusal of prison officials to accommodate [his] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs[.]"  United States v. Georgia, 546 U.S. 151, 157 (2006).  To recover monetary damages, a plaintiff must establish intentional discrimination.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001); Cohen v. City of Culver City, 754 F.3d 690, 695 n.6 (9th Cir. 2013).  A showing of deliberate indifference will satisfy the intent requirement.  Duvall, 260 F.3d at 1138.

Similarly, Section 504 of the Rehabilitation Act states, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).  Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and the elements of a cause of action are the same under both statutes.  Zukle, 166 F.3d at 1045 & n.11.

The statutory phrase "services, programs, or activities" is construed very broadly.  The Ninth Circuit has cautioned district courts against "hairsplitting" in deciding whether discrete functions of government entities come within the scope of ADA liability:

> Rather than determining whether each function of a city can be characterized as a service, program, or activity for purposes of Title II, … we have construed "the ADA's broad language [as] bringing within its scope 'anything a public entity does.' " Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) (quoting Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 171 (3d Cir. 1997), aff'd, 524 U.S. 206, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998)); see also Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998) (finding that "the phrase 'services, programs, or activities' encompasses virtually

6

1
2
3
4
5
6
7
8

everything that a public entity does"); <u>Innovative Health Sys., Inc. v. City of White Plains</u>, 117 F.3d 37, 45 (2d Cir. 1997) (reasoning that the phrase "programs, services, or activities" is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context"), <u>superseded on other grounds</u>, <u>Zervos v. Verizon New York, Inc.</u>, 252 F.3d 163, 171 n. 7 (2d Cir. 2001). Attempting to distinguish which public functions are services, programs, or activities, and which are not, would disintegrate into needless "hair-splitting arguments." <u>Innovative Health Sys.</u>, 117 F.3d at 45. The focus of the inquiry, therefore, is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is " 'a normal function of a governmental entity.'" <u>BAART</u> [<u>Bay Area Addition Research & Treatment, Inc. v. City of Antioch</u>], 179 F.3d [725] at 731 [(9th Cir. 1999)] (quoting <u>Innovative Health Sys.</u>, 117 F.3d at 44).

9
10

<u>Barden v. City of Sacramento</u>, 292 F.3d 1073, 1076 (9th Cir. 2002) (overruling district court's conclusion that sidewalks are not a "service, program or activity" of the City).

11

               b.  <u>Discussion</u>

12

                     i.  <u>The Bathroom Grab Bar</u>

13
14
15
16
17

        Defendants argue first that plaintiff cannot state a claim for relief based on the unsafe grab bar, because (1) the allegation that the bar failed is unrelated to any service, program or activity from which plaintiff was excluded, and (2) the TAC lacks facts demonstrating that any such exclusion was "because of" plaintiff's disability, i.e. intentionally discriminatory.  ECF No. 58-1 at 12.  The court disagrees.

18
19
20
21
22
23
24
25
26
27
28

        Plaintiff's claim is not based merely on the eventual failure of the grab bar, but on defendants' earlier and persistent failure to ensure the safety of the grab bar despite notice of a problem.  <u>See</u> ECF No. 28 at 34 (alleging defendants' discriminatory conduct included "failing to adequately inspect, maintain, repair and replace grab bars; failing to adequately respond to grievances and complaints about faulty grab bars; [and] failing to protect Plaintiff from injury or serious risk of injury…").  Providing bathrooms for inmates is something a prison normally does, and thus comes squarely within the scope of Title II and Section 504 under the standards set forth by the <u>Barden</u> court, <u>supra</u>.  Accordingly, the failure to provide safe and appropriate bathroom access to disabled inmates violates the ADA and allegations of unsafe bathroom accommodations state a cognizable claim for relief.  <u>See</u> <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1224 n. 44 (9th Cir. 2008) (providing appropriate and adequate bathroom facilities is a "service" of the jail,

1   and district court erred by rejecting claim that toilet facilities were inadequate where plaintiff

2   alleged *inter alia* that a grab bar was not properly positioned); see also Barrilleaux v. Mendocino

3   County, No. 4:14-cv-1373 DMR, 2018 WL 3585133 at *30, 2018 U.S. Dist. LEXIS 126291

4   (N.D. Cal. July 26, 2018) (where public entity provides restrooms, Title II of the ADA requires

5   maintenance of bathrooms accessible for individuals with disabilities).

6       The TAC alleges among other things that (1) plaintiff informed several defendants on

7   more than one occasion in May 2016 that he heard cracking noise coming from the wall behind

8   the grab bar that he was using to transfer himself from his wheelchair to the toilet; (2) that in July

9   2016 he submitted a prison request form asking that the matter be investigated; (3) that his

10  requests were ignored; and (4) and that defendant House, a plant operations worker, laughed

11  dismissively in response to plaintiff's concerns and said, "tell an officer to tell us when it breaks."

12  ECF No. 28 at 12-13.  The TAC also alleges that defendants were on independent notice of the

13  grab bar safety issue during the relevant period because of a previous lawsuit by another inmate.

14  Id. at 23.  Finally, plaintiff points to federal regulations implementing the ADA that require

15  secure grab bars in bathrooms, and to provisions of the Armstrong Remedial Plan that also

16  mandate such accommodations.[4]

17      These allegations amply support an inference that defendants were aware of the risk to

18  disabled inmates that was posed by the grab bar, and that their failure to take action was

19  deliberate.  See Duvall, 260 F.3d at 1138 (deliberate indifference requires knowledge that harm to

20  a federally protected right is substantially likely, and failure to act upon that likelihood).  This is

21  sufficient to demonstrate intentional discrimination against plaintiff as a wheelchair user.  See id.

---

[4]  "The Armstrong Remedial Plan is an order issued in a class action suit against the California
Department of Corrections and Rehabilitation ('CDCR') requiring the CDCR 'to ensure that
prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and
keep necessary assistive devices, and that they receive effective communication regarding
accommodations'."  Gonzalez v. Anderson, 1:19-cv-1421 GSA, 2020 WL 13094298, at *2 n.1
(E.D. Cal. Sept. 15, 2020) (citations omitted).  Violations of the Plan do not create independent
bases for relief, id. at *5, nor do they constitute per se violations of the ADA and RA.  However,
the undersigned rejects defendants' arguments that plaintiff's allegations of Armstrong Plan
violation are irrelevant.  Defendants can be presumed to be aware of their obligations under the
Plan, and this knowledge lends further support to the inference of deliberate indifference.

8

1   Accordingly, the grab bar allegations support claims for relief under the ADA and RA.

2                                   ii.   The Search

3          The court considers this aspect of plaintiff's claim separately from the allegations of

4   failure to provide specified medical or orthopedic devices, though they are asserted together as

5   deliberate refusals to provided necessary accommodations.  Plaintiff claims that his right to

6   accommodation and thus to be free from disability discrimination was violated by a search

7   conducted by defendant Officer Dizon on November 16, 2016.  The TAC alleges that plaintiff

8   had an order for nurses to assist him in and out of his wheelchair.  When Dizon approached

9   plaintiff to search his wheelchair, plaintiff requested assistance.  Dizon, who was aware of

10  plaintiff's mobility impairment and insensate leg, refused to personally assist him with transfer

11  out of his wheelchair or to call for assistance from a nurse or ADA worker.  Dizon made

12  comments that, construed in plaintiff's favor, reflected both racial animus and disparagement of

13  plaintiff's learning disability.  Forced to attempt an unaided transfer out of his wheelchair,

14  plaintiff injured himself.  ECF No. 28 at 30-31.

15         Defendants argue that routine inmate searches are not services, programs or activities

16  provided by the prison to which plaintiff was denied access.  The court rejects this argument

17  because inmate searches are an activity routinely performed in prisons and thus are subject to

18  Title II and Section 504.  See Lee, 250 F.3d at 691 (anything a public entity does counts as a

19  service, program or activity for purposes of Title II).  Disabled inmates must accordingly be

20  accommodated in the course of performing searches, and the deliberate failure to reasonably

21  accommodate a disabled inmate will support a claim for damages.  See Duvall, 260 F.3d at 1138.

22         The factual allegations of the TAC support an inference that Dizon failed to reasonably

23  accommodate plaintiff's disability in relation to the November 2016 search and that this failure

24  was deliberately indifferent.  Accordingly, the search-related allegations support claims for relief

25  under the ADA and RA.

26                           iii.   Orthopedic and/or Medical Supplies

27         Plaintiff claims that his rights under the ADA and RA were violated by the refusal of

28  various medical and correctional staff to provide him a protective boot, knee immobilizer, pillow

                                              9

1   wedge, and orthopedic shoes.  ECF No. 28 at 28-30, 31.  Defendants contend that these

2   allegations involve the alleged inadequate medical treatment of plaintiff's disability, rather than

3   discrimination based on disability.  ECF No. 58-1 at 12 (citing Simmons v. Navajo County, 609

4   F.3d 1011, 1022 (9th Cir. 2010) (overruled on other grounds by Castro v. Los Angeles, 833 F.3d

5   1060 (9th Cir. 2016).)).  Plaintiff counters that medical attention is an ADA service, and that the

6   denial of proper treatment also constitutes the denial of reasonable accommodation.  ECF No. 62

7   at 18-19 (citing Armstrong v. Wilson, 124 F.3d 1019, 1024 (9th Cir. 1997)).

8            Here the undersigned is persuaded that defendants have the better argument.  It is

9   undoubtedly true that medical services come within the scope of Title II and Section 504, and that

10   disabled inmates must be provided equal access to and quality of care.  However, plaintiff is

11   alleging the denial of specific items which are provided (or not) as a matter of medical judgment

12   rather than as a means of providing access.

13            In Simmons, the case cited by defendants, the Court of Appeals held in relevant part that

14   plaintiff could not maintain a Title II claim based on the denial of specific programs and

15   treatments to lessen his depression:

16          The ADA prohibits discrimination because of disability, not

17          inadequate treatment for disability. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled

18          prisoners . . . .  The ADA does not create a remedy for medical malpractice.").

19

20   Simmons, 609 F.3d at 1022.

21            Armstrong, cited by plaintiff, does not stand for a contrary proposition; the cited passage

22   merely states the general rule that the ADA and RA apply broadly to the operation of prisons,

23   including in the context of medical care.  Armstrong, 124 F.3d at 1024.  This rule would govern,

24   for example, the right of a mobility-impaired inmate to physically access a clinic for treatment or

25   for a blind inmate to receive follow-up care instructions in a format other than print.

26            Of course the denial of assistive devices may support a § 12132 claim within or outside

27   the context of access to medical care, but that is because assistive devices—for example, a

28   properly functioning wheelchair—are "instrumentalities for the provision of access" generally.

1    See Barker v. California Dep't of Corr. & Rehab. No. 2:13-cv-1793 KJN P, 2015 U.S. Dist.

2    LEXIS 85200 at *14-15, 2015 WL 3913546 at *6 (E.D. Cal. June 25, 2015), report and

3    recommendation adopted, 2015 U.S. Dist. LEXIS 12392, 2015 WL 5474307 (E.D. Cal. Sept. 16,

4    2015). The "devices" at issue here, however, are not instrumentalities for the provision of access

5    to prison programming and services but are means of treating plaintiff's underlying disability and

6    its medical sequelae. Accordingly, the denial of devices in this case is best understood as denial

7    of specific medical treatment rather than denial of disability accommodations.

8            A disabled plaintiff may also base ADA and RA claims on facts showing that medical

9    care, whether or not such care is related to the inmate's disability, was withheld or inadequately

10   provided because of the plaintiff's disability. At hearing on the motion, counsel argued this

11   theory and emphasized plaintiff's reliance on Holtzclaw v. Laxalt, No. 2:19-cv-00041-RFB-NJK,

12   2020 WL 8513250 (D. Nev. Feb. 17, 2020). The cited screening order found a cognizable claim

13   based on prison medical staff's alleged categorical refusal to provide medical treatment for

14   Hepatitis C ("HCV"):

15            "The ADA prohibits discrimination because of disability, not
             inadequate treatment for disability." Simmons v. Navajo County,
16           Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010), overruled on other
             grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th
17           Cir. 2016) (en banc); see also Marlor v. Madison County Idaho, 50
             Fed. App'x 872, 873 (9th Cir. 2002) (citing Bryant v. Madigan, 84
18           F.3d 246, 248–49 (7th Cir. 1996) to hold that inadequate medical
             care does not provide a basis for an ADA claim unless medical
19           services are withheld due to discrimination on the basis of
             disability). Therefore, in the context of prison medical services, to
20           state a colorable ADA claim at the screening stage, a plaintiff must
             allege more than a lack of adequate treatment or negligence or
21           deliberate indifference to serious medical needs; he must allege
             facts sufficient to show that he was denied the benefits of a prison
22           medical services program because of his disability. See Armstrong
             v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); see also Postawko
23           v. Missouri Dep't of Corr., No. 2:16-CV-04219-NKL, 2017 WL
             1968317, at *12–13 (W.D. Mo. May 11, 2017) (denial of
24           medication services because of hepatitis); see also McNally v.
             Prison Health Servs., 46 F. Supp. 2d 49, 58–59 (D. Me. 1999)
25           (denial of prescription medication services because of HIV).

26           The Court finds that Plaintiff states a colorable ADA claim against
             Defendant Dzurenda. Based on the allegations, Plaintiff's disability
27           is HCV, and because he suffers from HCV specifically, prison
             officials have denied Plaintiff medical services. Based on the
28           allegations, prison officials will not treat inmates if they have HCV.

11

> As a result of HCV, Plaintiff is unable to participate in the prison's work and educational programs. Accordingly, Plaintiff has stated a colorable claim for screening purposes.

Holtzclaw, 2020 WL 8513250 at *5.

The allegations of plaintiff's TAC are not analogous to those of Holtzclaw and the cases it cites. Plaintiff has not been categorically denied treatment for his disabling condition, nor have specific treatments or devices been denied *because of* plaintiff's paraplegia or insensate leg. As to each device, the allegations are that prison staff and medical providers disregarded medical risks that plaintiff faced as the result of his disability and injuries, and therefore failed to provide devices that could have minimized the risks and better treated plaintiff's condition(s). These allegations do not support an inference that that failure to provide the requested devices was "because of" plaintiff's paraplegia or status as a wheelchair user. Rather, they suggest medical malpractice in the context of disability. See Simmons, 609 F.3d at 1022 (quoting Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.")). Accordingly, these allegations do not state a basis for relief under the ADA and RA.

Claims One and Two should be dismissed to the extent that they rely on the denial of a protective boot, knee immobilizer, pillow wedge, and orthopedic shoes.

### iv.   Individual Defendants

Defendants argue that plaintiff's claims under § 12132 lie only against CDCR, and should be dismissed as redundant as to all individual defendants. When a plaintiff brings suit under the Rehabilitation Act or Title II of the ADA against a public entity, that entity is vicariously liable for the acts of its employees. Duvall, 260 F.3d at 1141. This general rule applies with full force to CDCR. See, Brown v. CDC, No. 1:04-cv-5215-LJO-DLB, 2008 U.S. Dist. LEXIS 18718, 2008 WL 681840 at *4 (E.D. Cal. Mar. 11, 2008); Barker, 2015 U.S. Dist. LEXIS 85200 at *11-12, 2015 WL 3913546 at *5. Because Claims One and Two are stated against CDCR, these claims are redundant as to the individual defendants. As noted above, plaintiff concedes the point. It will therefore be recommended that Claims One and Two, to the extent they state a claim as specified above, proceed against CDCR only.

1              3.  <u>Retaliation</u>

2                  a.  <u>Applicable Law</u>

3     The ADA provides as follows:

4           **(a) Retaliation.**  No person shall discriminate against any

5 individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a

6 charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

7           **(b) Interference, coercion, or intimidation.** It shall be unlawful to

8 coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having

9 exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any

10 right granted or protected by this Act.

11 42 U.S.C § 12203(a)-(b).

12     Accordingly, to state a claim for relief on grounds of retaliation a complaint must allege

13 facts showing that (1) plaintiff engaged in activity protected by the ADA, and (2) defendant

14 caused plaintiff to suffer an adverse action because of his protected activity.  See <u>Brown v. City</u>

15 <u>of Tucson</u>, 336 F.3d 1181, 1187 (9th Cir. 2003).

16              b.  <u>Discussion</u>

17     The TAC alleges that on November 16, 2016, plaintiff filed a grievance against defendant

18 Dizon related to the search that had occurred that day.  The pleading continues:

19           Approximately a week later, on November 23, 2016, CO DIZON

20 blocked Mr. Reed's path as he was on the way to the yard, DIZON held down Mr. Reed's wheelchair, bent down to his height and

21 stood inches away from his face, and through clenched teeth, with an angry and serious face, and with balled-up fists said, "I heard

22 about that complaint you put in. Your time is going to come." Mr. Reed felt threatened and intimidated by DIZON's actions and began

23 to roll away, at which point he heard DIZON say, "fucking snitch." Mr. Reed feared that if others were not nearby, DIZON would have

24 physically harmed him at that time. Ever since that moment, Mr. Reed avoided DIZON as much as possible, so much so that he

25 would skip school programs or yard time if DIZON was in his path. He was so fearful that DIZON would physically harm him that he

26 would ask other people at CMF to tell him if DIZON was nearby so that he could avoid him.

27 ECF No. 28 at 22; <u>see also</u> <u>id.</u> at 31-32.

28     These allegations support a claim for relief under § 12203.  Plaintiff complained of

1   alleged violations of his rights under the ADA and RA, and Dizon allegedly responded with

2   threats sufficient to put a reasonable person in fear for his safety.  This is enough to state a claim.

3   See Armstrong v. Newsom, 58 F.4th 1283, 1293 (9th Cir. 2023) ("[R]etaliating against

4   inmates who . . . report denials of accommodations" is a violation of the ADA).

5          Defendants argue that plaintiff has not alleged facts demonstrating "discrimination"

6   within the meaning of § 12203(a) or facts demonstrating that any threat was related to assertion of

7   ADA rights under § 12203(b).  ECF No. 58 at 13.  These arguments are rejected.  The statute by

8   its terms defines retaliatory action as a species of discrimination.  § 12203(a).  Submitting a

9   grievance about ADA violations is indisputably activity protected by the ADA.  Pardi v. Kaiser

10  Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004); see also Brown, 336 F.3d at 1187.  Plaintiff's

11  allegations establish both a direct threat ("Your time is going to come") and deliberate

12  endangerment (calling plaintiff a "snitch" within hearing of other inmates[5]), which constitute

13  adverse actions under either section of the statute.  The TAC readily supports an inference that

14  these prohibited acts were in response to plaintiff's complaint about violation of his rights as a

15  disabled inmate.  See Pardi, 389 F.3d at 850 (retaliatory intent may be inferred).

16         Defendants also contend that the claim is deficient because plaintiff has not alleged any

17  injury from the alleged threats.  ECF No. 58 at 13.  But plaintiff has alleged that Dizon's actions

18  caused him anxiety, flashbacks, PTSD symptoms, and fear of violence.  Moreover, the nature of

19  the alleged threats and endangerment are of a type that can reasonably be expected to chill an

20  inmate's exercise of his rights under the ADA and RA.  This is sufficient to state a claim.  See

21  Brown, 336 F.3d at 1191-93 (requisite injury may consist of the giving up of ADA rights or come

22  from the threat itself).

23         Finally, defendants argue that the retaliation claim must be dismissed because it seeks

24  only damages, but the statute provides for only equitable relief.  Defendants are correct that

25  damages are available only for the portions of Claims One and Two that arise under § 12132 (the

26

27  [5]  Defendants argue that plaintiff failed to allege the statement was made within hearing of other
    inmates, but the quoted paragraph of the TAC expressly states that others were nearby.  This is
28  sufficient to support the necessary inference at the pleading stage.

                                                    14

1  Title II discrimination subclaims) and not for retaliation alleged under § 12203.  See Alvarado v.

2  Cajun Operating Co., 588 F.3d 1261, 1269 (9th Cir. 2009) (holding that punitive and

3  compensatory damages are not available for ADA retaliation claims).  However, the TAC seeks

4  not only damages but declaratory relief and "other and further relief as the court deems just and

5  proper."  See ECF No 28 at 45.  This language is hereby construed to include equitable relief.

6  Accordingly, while it is true that plaintiff cannot obtain damages on this portion of Claims One

7  and Two, this provides no grounds for dismissal.

8      For all these reasons, plaintiff's statutory retaliation claims should proceed.

9                    C.  Claim Three: Eighth Amendment Deliberate Indifference

10                    1.  Overview

11      Plaintiff's Eighth Amendment claim is based on (1) the failure of Dr. Pai and Nurse Tan

12  to identify and treat pressure sores caused by plaintiff's splint, and to treat his related pain; (2) Dr.

13  Pai's failure thereafter to provide appropriate wound care treatment for the necrotic tissue that

14  developed at plaintiff's heel; and (3) the subsequent refusals of defendants Wofford, Brick and

15  Gerbasi to order clinically indicated debridement and patch graft surgery.  ECF No. 28 at 35-37.

16                    2.  Applicable Law

17      In order to state a § 1983 claim for violation of the Eighth Amendment based on

18  inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to

19  evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

20  (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and

21  that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294,

22  299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  A serious

23  medical need exists if the failure to treat a prisoner's condition could result in further significant

24  injury or the unnecessary and wanton infliction of pain.  See Wood v. Housewright, 900 F. 2d

25  1332, 1337-41 (9th Cir. 1990).  The requisite state of mind is "deliberate indifference."  Hudson

26  v. McMillian, 503 U.S. 1, 4 (1992).  A prison official acts with deliberate indifference only if he

27  subjectively knows of and disregards an excessive risk to inmate health and safety.  Toguchi v.

28  Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

15

1

2

3. <u>Discussion</u>

a. <u>Dr. Pai</u>

Defendants do not argue that plaintiff has failed to allege a serious medical need, and it is obvious that plaintiff's injuries from the grab bar failure and the subsequent risk of pressure sores on a splinted, insensate leg satisfy this requirement. The issue is whether plaintiff has alleged facts sufficient to demonstrate deliberate indifference on Dr. Pai's part.

Plaintiff alleges that when he first saw Dr. Pai on September 23, 2016—after several days in a leg splint, and after having developed a fever and experiencing severe pain—he expressed concerns about developing pressure sores under his splint. Dr. Pai failed to remove the splint and perform an examination of the affected skin, although pressure ulcer prevention for paraplegics requires regular visual and tactile skin inspections. For the next ten days plaintiff continued to raise his concerns verbally and in a written Form 22 request, indicating his belief that he was developing a bed sore on the heel of his foot and leg. Dr. Pai still did not examine the heel and leg or treat plaintiff's pain. Plaintiff therefore suffered unrelenting pain until he returned to San Joaquin General Hospital on October 4, 2016, where the splint was finally removed and significant dead tissue was discovered on his heel. These obvious pressure sores were deemed secondary to the splinting, and required surgery. Back at CMF, Dr. Pai still failed to provide treatment for pressure sores. Her October 10, 2016 treatment notes state, "No pressure sores were seen, only scabbed area," although scabs are recognized in the pressure ulcer prevention literature as signs of pressure ulcers. The next day plaintiff returned to the hospital for surgery, and it was observed that the ulcerations on his heel had worsened such that the heel was now black and dusky. ECF No. 28 at 15-17, 35-36.

Following plaintiff's surgery, staff at CMF failed to provide the follow-up care that had been recommended by Dr. Casey at SJSH. At an October 25 follow-up appointment with Dr. Casey, plaintiff was told that he had developed a Stage 3-4 ulceration that required special care. On October 28, Dr. Pai discontinued a previous would care order and replaced it with a treatment

////

////

16

method called "wet to dry,"[6] which is inconsistent with contemporary standards of care because it is known to delay healing and cause severe pain.  On November 15, 2016, plaintiff was seen by Dr. Wolterbeek at SJGH, who confirmed that he had a "large and necrotic area" on his left heel, involving both extensive "dry gangrene" and areas of bleeding.  Dr. Wolterbeek recommended appropriate wound care, debridement, and patch graft surgery, none of which was subsequently provided by Dr. Pai.  ECF No. 28 at 18-20, 36.

These allegations are more than sufficient to support an inference of deliberate indifference on the part of Dr. Pai.  Subjective knowledge of the initial risk of pressure sores was provided by the patient's reports and by his objective condition, and knowledge of his subsequent serious medical needs as the sores worsened and the heel became gangrenous was provided by the treatment records and orders from SJGH as well as by plaintiff's complaints.  Dr. Pai's alleged failure to take appropriate action thus constitutes disregard of a known risk.

Defendants argue that, at least as to wound care methods and surgical interventions, plaintiff has alleged only a difference of medical opinion that cannot support an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, plaintiff has specifically alleged that Dr. Pai violated minimum applicable standards of care.  The failure to provide competent treatment supports Eighth Amendment liability.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  Here the TAC alleges not just a difference of opinion as to the most appropriate among medically acceptable options, but care that was medically unacceptable under the circumstances.  See Jackson, 90 F.3d at 332.  At the pleading stage, plaintiff's allegations are adequate to support an Eighth Amendment claim against Dr. Pai.

To the extent defendants argue that Dr. Pai is entitled to qualified immunity, that defense cannot provide a basis for dismissal at the pleading stage.  The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231(2009).  When defendants assert qualified immunity in a motion to dismiss under

---

[6] "Wet to dry treatment" entails cleansing a wound with saline and then covering it with a dry dressing.  ECF No. 28 at 19, ¶ 71.

1  Rule 12(b)(6), dismissal is not appropriate unless the court can determine, based on the complaint

2  itself, that qualified immunity applies.  O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016).

3  That is not the case here.  Construing the TAC in plaintiff's favor, Dr. Pai acted with callous

4  disregard for plaintiff's suffering and provided care that fell outside the range of medically

5  acceptable treatment.  Qualified immunity would not apply under these circumstances.

6  Accordingly, qualified immunity does not provide a basis for dismissal.

7                         b.   Nurse Tan

8         The TAC does not contain allegations sufficient to state a claim for relief against Nurse

9  Tan.  Indeed, the only allegation regarding Tan is that she was among the medical staff to whom

10  plaintiff raised his concern about pressure sores during the relevant period.  Plaintiff then alleges

11  that none of the individuals to whom he complained removed his splint or provided better pain

12  medication.  ECF No. 28 at 35, ¶ 156.  This is not a sufficient basis to show that Tan was

13  personally aware of and disregarded an excessive risk to plaintiff's health and safety, or that she

14  was a cause of the allegedly unconstitutional level of medical care.  See Johnson v. Duffy, 588

15  F.2d 740, 743 (9th Cir. 1978) (liability under § 1983 is limited to persons who caused a

16  deprivation of plaintiff's rights).  The claim should be dismissed as to defendant Tan.

17                         c.   Defendants Wofford, Brick and Gerbasi

18         Defendants Wofford, Brick and Gerbasi are allegedly liable for their failures, in response

19  to plaintiff's medical appeals, to order surgeries that had been recommended by the podiatrist at

20  San Joaquin General Hospital.  Wofford, the ADA Associate Warden at CMF, denied a request

21  for debridement and patch graft surgery on January 19, 2017; surgery was performed on an urgent

22  basis the following month to remove dead tissue.  Dr. Bick, CMF's Chief Medical Officer and a

23  member of the Reasonable Accommodation Panel, denied plaintiff's appeal on March 27, 2017.

24  Dr. Gerbasi, the Chief Executive Officer at CMF, denied a subsequent appeal on May 9, 2017.

25  ECF No. 28 at 36-37.

26         As to these defendants, the TAC lacks sufficient factual matter to raise the right to relief

27  above the speculative level.  Without more, the review of a grievance does not establish that the

28  reviewer knew of a serious medical need.  Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014).

1   Doctors Bick and Gerbasi are not alleged to have had any direct involvement in plaintiff's care,

2   and Wofford was an ADA administrative officer not a medical professional.  Plaintiff emphasizes

3   that the reviewing officials had access to and presumably reviewed the entire medical file, but

4   that supports no more than an inference that the reviewers should have been aware of the risk

5   plaintiff faced.  This is insufficient to state a claim.  See Gibson v. County of Washoe, Nevada,

6   290 F.3d 1175, 1187 (9th Cir. 2002) (where an official should have been aware of the risk but

7   was not, then the official has not violated the Eighth Amendment no matter how severe the risk).

8   And even if the rejection of plaintiff's appeals resulted in the denial of necessary medical care,

9   the TAC lacks facts supporting a reasonable inference that any of these individuals acted with the

10   requisite state of mind to support liability.  Accordingly, Claim Three should be dismissed as

11   against defendants Wofford, Brick and Gerbasi.

12              D.  Claim Four: First Amendment Retaliation

13                   1.  Overview

14       Claim Four is based on the same alleged retaliation by Officer Dizon as plaintiff's

15   statutory retaliation claim.  The facts are set forth above in that context.

16                   2.  Applicable Law

17       Inmates have a First Amendment right to file grievances and to be free from retaliation for

18   doing so.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  To state a claim for retaliation

19   in violation of First Amendment rights, a prisoner must allege facts showing (1) that a state actor

20   took some adverse action against him (2) because of (3) the prisoner's protected conduct, and that

21   such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

22   not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68

23   (9th Cir. 2005).

24                   3.  Discussion

25       The allegations of the TAC adequately support the above elements.  Both threats and the

26   endangerment of an inmate by calling him a snitch constitute "adverse action" that can support a

27   First Amendment retaliation claim.  See Brodheim, 584 F.3d at 1271 (threats); Valandingham v.

28   Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (calling inmate a "snitch" in front of other

19

1  inmates).  The sequence of events alleged in the TAC supports an inference that Dizon's adverse

2  action was motivated by plaintiff's complaint regarding the wheelchair search, which was

3  protected activity.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (First Amendment

4  protects inmates' right to file grievances without facing retaliation).  Plaintiff's allegations

5  regarding his consequent fear support an inference of chilling effect.[7]  Finally, no legitimate

6  correctional goal is served by threatening an inmate or labeling him a snitch.  See Valandingham,

7  866 F.2d at 1138.

8         As the preceding citations to authority indicate, these principles are sufficiently well

9  established that, taking the allegations as true and drawing all inferences in plaintiff's favor,

10  qualified immunity would provide no defense.  Accordingly, qualified immunity does not bar the

11  claim at the pleading stage.  See O'Brien, 818 F.3d at 936.  The motion to dismiss should be

12  denied as to plaintiff's First Amendment retaliation claim.

13                    E.  State Law Claims[8]

14                        1.  California Government Claims Act

15         As to all of plaintiff's state law claims, defendants argue (1) that plaintiff fails to state a

16  claim because he has not alleged compliance with the claim presentation requirement of

17  California's Government Claims Act, Cal. Gov. Code § 810 et seq., and (2) that judicially

18  noticeable facts establish plaintiff's actual non-compliance with the claim presentation and

19  timeliness requirements of the Act.

20         The statute provides in relevant part that "[b]efore a person can sue a [California] public

21  entity or public employee for money damages for actions taken within the scope of the person's

22  employment, he or she must first file a government claim pursuant to the CGCA[.]"  Robinson v.

23  Alameda County, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (citations omitted).  This

24  requirement applies to state law claims brought in federal court.  Karim-Panahi v. Los Angeles

25
   [7]  To the extent defendants argue that the claim is subject to dismissal because it does not use the
26  words "chilling effect," the argument is rejected as hyper-technical.
   [8]  Because the undersigned finds that the motion to dismiss should be denied as to most of
27  plaintiff's federal claims, defendants' argument for the declination of supplemental jurisdiction is
   summarily rejected.  The other arguments raised by the motion are addressed in the discussion
28  that follows.

Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  A claim alleging a cause of action for personal

injury must be presented to the public entity no later than six months after the accrual of the cause

of action.  Cal. Gov. Code § 911.2(a).  If the public entity provides written notice rejecting the

claim, the claimant has six months thereafter to initiate a lawsuit.  Id., § 945.6(a)(1).  If the public

entity fails to provide written notice, the claimant has two years from the accrual of the cause of

action to initiate suit.  Id., § 945.6(a)(2).

"[T]he filing of a [state tort] claim for damages is more than a procedural requirement, it

is a condition precedent to plaintiff's maintaining an action against defendant, in short, an integral

part of plaintiff's cause of action."  Williams v. Horvath, 16 Cal.3d 834, 842 (1976) (citations and

internal quotation marks omitted).  "[F]ailure to timely present a claim for money or damages to a

public entity bars a plaintiff from filing a lawsuit against that entity."  State of California v.

Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004).  Because "compliance with the claim

presentation requirement is an element of a cause of action against a public entity," plaintiff's

failure "to allege facts demonstrating or excusing compliance with the requirement subjects a

complaint to general demurrer for failure to state a cause of action."  Id. at 1240-41 (citations and

internal quotation marks omitted).

The TAC does not contain facts demonstrating or excusing compliance with the California

claim presentation requirement as to any of plaintiff's state law claims.[9]  Accordingly, each of

them fails to state a claim for relief and the motion to dismiss must be granted on that basis.

Plaintiff seeks leave to add the necessary allegations by amendment, ECF No. 62 at 27, and leave

to amend would be appropriate except as to any claim that is incurably defective for other

reasons.  See National Council of La Raza v. Chegavske, 800 F.3d 1032, 1041 (9th Cir. 2015)

("black letter law" that leave to amend should be freely granted unless amendment would be

_____

[9]  The court rejects plaintiff's suggestion that he satisfied his pleading obligations under the
CGCA by alleging generally that he "exhausted all administrative remedies with respect to [his]
claims."  See ECF No. 62 at 26 (quoting TAC at ¶ 98).  The exhaustion of administrative
remedies is a requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).  See
Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  Compliance with the CGCA is an entirely
different issue governed by state law.  Unlike the PLRA, the CGCA imposes a specific pleading
requirement rather than merely creating an affirmative defense.

1   futile).  Although defendants make a factual case for the application of state law bars, on grounds

2   that some of plaintiff's allegations were not included in any claim meeting the presentation

3   requirement and that others are barred by the Act's timeliness rules,[10] the undersigned is mindful

4   that "there are numerous ways to obtain relief from the claim presentation requirement."  Bodde,

5   32 Cal. 4th at 1245.  Until plaintiff's specific factual allegations regarding CGCA compliance are

6   before the court, and perhaps until the summary judgment stage on a more complete evidentiary

7   record, the undersigned finds that resolution of CGCA compliance issues is premature.

8           Because leave to amend the state law claims is appropriate unless amendment would be

9   futile on grounds other than the claim presentation requirement, the court turns to defendants'

10  claim-specific arguments for dismissal.

11                          2.   Claim Five: Bane Act

12          The Tom Bane Civil Rights Act, codified at California Civil Code § 52.1, protects

13  individuals from interference with federal or state rights by creating a cause of action for such

14  interference that is carried out "by threats, intimidation or coercion."  See Venegas v. County of

15  Los Angeles, 153 Cal.App.4th 1230 (2007); Chaudhry v. City of Los Angeles, 751 F.3d 1096,

16  1105 (9th Cir. 2014).  Claims under the Bane Act may be brought against public officials who are

17  alleged to interfere with protected rights, and qualified immunity is not available for those claims.

18  Venegas, 63 Cal.Rptr.3d at 753.  The Bane Act requires a specific intent to violate the plaintiff's

19  rights.  Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018).  Claim Five is

20  asserted against defendants Dizon, Pai, and Tan.

21          To the extent Claim Five is predicated on Officer Dizon's retaliatory threats, ECF No. 28

22  at 39-40, plaintiff states a claim for relief under the Bane Act.  The undersigned has found above

23  that the TAC alleges the violation of plaintiff's statutory and constitutional rights to be free from

24  retaliation, and plaintiff's allegations specifically involve the use of threats and conduct

25  _____

26  [10]  See ECF No. 58-1 at 23-25 (motion), ECF No. 58-2 (Request for Judicial Notice and attached
    documents).  Although it may be permissible in some circumstances for the court to consider
27  matters outside the pleadings on a Rule 12 motion, the present record does not support resolution
    of the issue for the reasons explained above.  Neither is a motion to dismiss the appropriate
28  vehicle for the fact-finding necessary to resolve the matter.

1    amounting to intimidation.  Moreover, the allegations regarding the manner in which the threat

2    was delivered support an inference that Dizon acted with specific intent to violate plaintiff's

3    rights.[11]  This is sufficient to state a claim under the Bane Act.

4         To the extent this claim is asserted against Dr. Pai on the basis of inadequate medical care,

5    ECF No. 28 at 40-41,[12] it also states a viable claim for relief.  Although Eighth Amendment

6    deliberate indifference is not measured by reference to "threats, intimidation or coercion," and no

7    specific threats or acts of intimidation are alleged against Dr. Pai, several courts have found

8    that "a prison official's deliberate indifference to serious medical needs is a coercive act" for

9    purposes of the Banes Act.  Scalia v. County of Kern, 308 F.Supp.3d 1064, 1084 (E.D. Cal. 2018)

10   (so holding, and discussing cases); see also Graves v. Calif. Dep't of Corr. And Rehab., 2019

11   U.S. Dist. LEXIS 229086 at *18 (C.D. Cal. 2019) (a viable claim of deliberate indifference to

12   medical needs satisfies pleading requirements of Bane Act) (citing Scalia); Luttrell v. Hart, 2020

13   U.S. Dist. LEXIS 173856 at * 15-16 (N.D. Cal. 2020) (same) (citing Scalia).  Intentionality is the

14   key to a Bane Act claim, and deliberate indifference involves affirmatively culpable conduct that

15   therefore supports a claim under the Act.  M.H. v. County of Alameda, 90 F. Supp. 3d 889, 898-

16   99 (N.D. Cal. 2013) (cited with approval in Cornell v. City & County of San Francisco, 17 Cal.

17   App. 5th 766, 802 n.31 (2017)[13]).  The undersigned agrees.  For the reasons explained in Scalia,

18   308 F.Supp.3d at 1081-84, plaintiff has stated a claim against Dr. Pai under the Bane Act.

19        To the extent however that Claim Five is stated against Nurse Tan on the basis of

20   inadequate medical care, ECF No. 28 at 40-41, it fails to state a claim.  The court has found above

21   that no Eighth Amendment deliberate indifference claim is stated as to Tan.  Accordingly, a Bane

22   Act claim against Tan fails for the same reasons.

23

24   [11]  See ECF No. 28 at 22 ("… DIZON held down Mr. Reed's wheelchair, bent down to his height
     and stood inches away from his face, and through clenched teeth, with an angry and serious face,
25   and with balled-up fists said, 'I heard about that complaint you put in. Your time is going to
     come.' Mr. Reed felt threatened and intimidated by DIZON's actions and began to roll away, at
26   which point he heard DIZON say, 'fucking snitch.'").
     [12]  See ECF No. 28 at 40-41.
27   [13]  In Cornell, a wrongful arrest case, the state court rejected an interpretation of the Bane Act as
28   requiring coercive acts independent of the underlying violation of rights.

3.  <u>Claim Six: California Disabled Persons Act</u>

California Civil Code § 54.1(d) states: "(d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and this section does not limit the access of any person in violation of that act."  The CDPA thus incorporates the ADA into California law.  <u>Wander v. Kaus</u>, 304 F.3d 856, 857 (9th Cir. 2002).  Defendants' arguments as to this claim mirror their challenge to plaintiff's ADA and RA claims, and they are rejected to the same extent and for the reasons set forth above in that context.  If plaintiff is able to satisfy the claim presentation requirement of the CGCA, his CDPA claim should proceed on the same factual bases as his ADA and RA claims.

4.  <u>Claim Seven: Negligence</u>

Defendants' arguments for dismissal of the negligence claim are limited to the CGCA issues.  There has been no showing that plaintiff's factual allegations fail to state a claim for negligence.

5.  <u>Leave to Amend State Law Claims</u>

Because all of plaintiff's state law claims—with the sole exception of Claim Five as against defendant Tan—are not subject to dismissal for reasons independent of the CGCA, plaintiff should be granted leave to amend.  Amendment should be limited to the pleading of facts demonstrating or excusing compliance with the Act.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this case.

For the reasons set forth above, IT IS FURTHER RECOMMENDED that defendants' motion to dismiss (ECF No. 58) be GRANTED IN PART AND DENIED IN PART as follows:

1.  The motion should be GRANTED as to:

    a.  Claims One (ADA) and Two (RA) against the individual defendants to the extent these claims are based on the grab bar and search issues;

    b.  Claims One (ADA) and Two (RA) to the extent they are based on the denial of a protective boot, knee immobilizer, pillow wedge, and orthopedic shoes;

24

  c. Claim Three (Eighth Amendment) as stated against defendants Tan, Wofford, Bick and Gerbasi;

  d. Claim Five (Bane Act) as stated against Tan;

  e. Claim Six (California Disabled Persons Act) to the extent it is based on the denial of a protective boot, knee immobilizer, pillow wedge, and orthopedic shoes only;

  f. Claims Five, Six and Seven (the state law claims), without prejudice, on the ground that plaintiff has not pleaded facts demonstrating or excusing compliance with the claim presentation requirement of the California Government Claims Act.

2. The motion should be DENIED as to:

  a. Claims One and Two against CDCR, insofar as these claims are predicated on (i) failure to ensure a safe bathroom grab bar, and (ii) failure to provide accommodation in the course of the wheelchair search;

  b. Claims One and Two insofar as they are predicated on retaliation by defendant Dizon;

  c.  Claim Three (Eighth Amendment deliberate indifference to serious medical need) against defendant Pai;

  d. Claim Four (First Amendment retaliation);

  e. Claim Five (Bane Act) against defendants Dizon and Pai on all grounds other than failure to plead compliance with the claim presentation requirement of the CGCA;

  f. Claim Six (California Disabled Persons Act) to the extent it is based on (i) failure to ensure a safe bathroom grab bar; (ii) failure to provide accommodation in the course of the wheelchair search; and (iii) retaliation;

  g. Claims Six (California Disabled Persons Act) and Seven (negligence) on all grounds other than failure to plead compliance with the claim presentation requirement of the CGCA.

3.  Leave to amend should be granted as to Claims Five, Six and Seven for the sole purpose of pleading facts demonstrating or excusing compliance with the claim presentation requirement of the California Government Claims Act.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 19, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE